22883 |

ORIGINAL

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR 1 4 2006

CLERK, U.S. DISTRICT COURT
By _____ KC
        Deputy

|  |  |
|---|---|
| SAM KING, Individually, on Behalf of All Others Similarly Situated, and Derivatively on Behalf of Nominal Defendant FLOWSERVE CORPORATION, | §<br>§<br>§<br>§<br>§ |
| *Plaintiff,* | §<br>§<br>§ |
| v. | §<br>§ |
| CHRISTOPHER A. BARTLETT, HUGH K. COBLE, C. SCOTT GREER, DIANE C. HARRIS, GEORGE T. HAYMAKER, JR., RENEE J. HORNBAKER, MICHAEL F. JOHNSTON, LEWIS M. KLING, CHARLES M. RAMPACEK, JAMES O. ROLLANS, WILLIAM C. RUSNACK, and KEVIN E. SHEEHAN, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |
| *Defendants,* | §<br>§ |
| and | § |
| FLOWSERVE CORPORATION, | §<br>§ |
| *Nominal Defendant.* | § |

CASE NUMBER 3-06 CV-0453G

**JURY TRIAL DEMANDED**

## VERIFIED CLASS ACTION AND DERIVATIVE COMPLAINT

Plaintiff, by his attorneys, submits this Verified Class Action and Derivative Complaint (the "Complaint") against the defendants named herein.

## NATURE OF THE ACTION

1.      Plaintiff brings this action individually, on behalf of a class of shareholders (the "Class," as defined herein) of Flowserve Corporation ("Flowserve" or the "Company"), and derivatively for the benefit of Flowserve against the members of Flowserve's Board of Directors (the

"Board") and certain executive officers seeking to remedy defendants' breaches of fiduciary duties, unjust enrichment, and other violations of law.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this action states a federal question.  This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

3.      Venue is proper in this district because a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this district.  One or more of the defendants either resides in or maintains executive offices in this district, and defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

## PARTIES

4.      Plaintiff Sam King is, and was at all relevant times, a shareholder of nominal defendant Flowserve.

5.      Nominal defendant Flowserve is a New York corporation with its principal executive offices located at 5215 North O'Connor Boulevard, Suite 2300, Irving, Texas 75039.  According to its public filings, Flowserve is a manufacturer and aftermarket service provider of comprehensive flow control systems.

6.      Defendant C. Scott Greer ("Greer") served as a director of Flowserve and as President of the Company from 1999 until his resignation in May 2005 and as Chairman of the Board and Chief Executive Officer of the Company from 2000 until his resignation in May 2005.

2

7.     Defendant Renee J. Hornbaker ("Hornbaker") served as Vice President and Chief Financial Officer of the Company at all times relevant hereto until her resignation in June 2004.

8.     Collectively, defendants Greer and Hornbaker are referred to herein as the "Officer Defendants."

9.     Defendant Diane C. Harris ("Harris") has served as a director of Flowserve since 1993. Harris currently serves as Chair of the Audit/Finance Committee of the Board (the "Audit Committee"), and has served as a member of the Audit Committee at all times relevant hereto.

10.    Defendant James O. Rollans ("Rollans") has served as a director of Flowserve since 1997. Rollans has served as a member of the Audit Committee at all times relevant hereto.

11.    Defendant William C. Rusnack ("Rusnack") has served as a director of Flowserve since 1997. Rusnack has served as a member of the Audit Committee at all times relevant hereto.

12.    Defendant Charles M. Rampacek ("Rampacek") has served as a director of Flowserve since 1998. Rampacek has served as a member of the Audit Committee at all times relevant hereto.

13.    Collectively, defendants Harris, Rollans, Rusnack, and Rampacek are referred to herein as the "Audit Committee Defendants."

14.    Defendant Lewis M. Kling ("Kling") has served as a director of Flowserve and as President and Chief Executive Officer of the Company since August 2005. Kling served as Chief Operating Officer of the Company prior to his appointment as President and Chief Executive Officer.

15.    Defendant Kevin E. Sheehan ("Sheehan") has served as a director of Flowserve since 1990 and has served as Chairman of the Board since August 2005. Sheehan served as Interim Chairman, President and Chief Executive Officer of the Company from May 2005 to August 2005.

16.    Defendant Michael F. Johnston ("Johnston") has served as a director of Flowserve since 1997.

3

17.     Defendant Christopher A. Bartlett ("Bartlett") has served as a director of Flowserve since 2002, and previously served as a director of Flowserve from 1988 to 1993.

18.     Defendant Hugh K. Coble ("Coble") has served as a director of Flowserve since 1994.

19.     Defendant George T. Haymaker, Jr. ("Haymaker") has served as a director of Flowserve since 1997.

20.     Collectively, defendants Kling, Harris, Rollans, Rusnack, Rampacek, Sheehan, Johnston, Bartlett, Coble, and Haymaker are referred to herein as the "Director Defendants."

21.     Collectively, the defendants identified in paragraphs 6-20 will be referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

22.     By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust, loyalty, and due care, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

23.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

4

24. To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of the Company were required to, among other things:

a. exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business;

b. exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with the Company's by-laws and all applicable federal and state laws, rules, regulations and requirements, including acting only within the scope of its legal authority;

c. exercise good faith to ensure that the Company's financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP");

d. exercise good faith in supervising the preparation and filing of all financial statements and other financial information required by law, including periodic financial statements and reports filed with the Securities and Exchange Commission ("SEC"), and in examining and evaluating the financial statements and other information concerning the financial affairs of the Company; and

e. when placed on notice of improper or imprudent conduct by the Company and/or its employees, exercise good faith in taking action to correct the misconduct and prevent its recurrence.

25. The Individual Defendants, particularly the Officer Defendants and Audit Committee Defendants, were responsible for maintaining and establishing adequate internal accounting controls for the Company and to ensure that the Company's financial statements were based on accurate financial information. According to GAAP and SEC rules, to accomplish the objectives of accurately recording, processing, summarizing, and reporting financial data, a corporation must establish an internal accounting control structure. Among other things, the Individual Defendants were required to:

5

(1)    make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; and

(2)    devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that --

    (a)    transactions are executed in accordance with management's general or specific authorization;

    (b)    transactions are recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles.

26.    Flowserve's Audit/Finance Committee Charter provides that the Audit Committee shall, among other things:

    a.    Review the annual financial statements and the results of the audit (including a review of significant transactions not a normal part of the Company's business, changes in accounting principles and practices, significant proposed adjustments, and the choice of accounting principles);

    b.    Receive and review copies of significant items included in internal audit reports from the internal auditing staff, together with the corresponding responses received from the audited entity pertaining to such reports; and

    c.    Review management's presentation of financial statements and related materials and evaluate whether the Board of Directors receives an objective and adequate flow of information as to matters which lie within the scope of the Committee's responsibilities.

## FACTUAL ALLEGATIONS

### Improper Accounting Practices

27.    From 2000 to 2004 (the "Relevant Period"), the Officer Defendants and Audit Committee Defendants breached their fiduciary duties to Flowserve and its shareholders by knowingly disseminating to shareholders false and misleading information regarding the Company's financial performance.

6

28.     Through their receipt of weekly, monthly, and quarterly reports; attendance at Board and Audit Committee meetings; review of the Company's financial statements; and conversations with the Company's management, internal auditors, and external auditors, the Officer Defendants and Audit Committee Defendants knew that Flowserve was systematically violating GAAP by, among other things, understating the cost of sales, overstating the value of inventory, managing earnings through the use of "cookie jar" reserves, and understating operating expenses by improperly classifying them as one-time charges.

**Improper Understatement of Cost of Sales and Overstatement of Inventory**

29.     Pursuant to GAAP, in any particular reporting period the full cost of manufacturing a product must be matched against the revenue recognized from selling the product.  Specifically, ARB No. 43, Chapter 4, ¶ 4 provides:

> In accounting for the goods in the inventory at any point of time, the major objective is the matching of appropriate costs against revenues in order that there may be a proper determination of the realized income.  Thus, the inventory at any given date is the balance of costs applicable to goods on hand remaining after the matching of absorbed costs with concurrent revenues.

30.     During the Relevant Period, Flowserve violated GAAP by recording as expenses only a portion of the cost of manufacturing products and leaving the remainder as part of the work-in-process ("WIP") asset on Flowserve's balance sheet.  This improper accounting practice resulted in financial statements that overstated the value of inventory, understated the cost of sales, and thus overstated net income.

31.     Pursuant to GAAP, inventory must be recorded at a value equal to the lower of cost or market value, and the value of inventory must be written down if the market value drops below cost.  Specifically, ARB No. 43, Chapter 4, Statement 5 provides:

> Where there is evidence that the utility of goods, in their disposal in the ordinary course of business, will be less than cost, whether due to physical deterioration, obsolescence, change in price levels, or other causes, the difference should be recognized as a loss of the current period. This is generally accomplished by stating such goods at a lower level commonly designated as market. . . . Thus, in accounting for inventories, a loss should be recognized whenever the utility of goods is impaired. . . . .

32.     During the Relevant Period, Flowserve violated GAAP by failing to write down the value of inventory to the lower of cost or market.   This improper accounting practice resulted in financial statements that overstated the value of inventory, understated expenses, and thus overstated net income.

33.     The Officer Defendants and Audit Committee Defendants knew that Flowserve was violating GAAP as described above because they regularly reviewed: (i) inventory reports showing millions of dollars' worth of discrepancies between Flowserve's physical inventory counts and the value of inventories recorded on the Company's books; and (ii) cost analyses showing significant differences between actual manufacturing costs and standard manufacturing costs recorded on the Company's books.

## Improper Use of "Cookie Jar" Reserves

34.     Pursuant to SFAS No. 5, GAAP prohibits the use of reserve accounts for general or unspecified purposes.

35.     During the Relevant Period, Flowserve violated GAAP by using improper "cookie jar" reserves to manage earnings.  Flowserve added to the reserves in periods when the Company's actual earnings were greater than expected and drew from the reserves in periods when the Company's actual earnings were less than expected and thereby "smoothed" its reported earnings over time.

8

36.     The Officer Defendants and Audit Committee Defendants knew that Flowserve was violating GAAP as described above, because they regularly reviewed the Company's internal financial statements, which included numerous improper reserve accounts.

### Improper Use of One-Time Charges

37.     Pursuant to GAAP, as set forth in EITF Nos. 94-3 and 95-3, costs incurred in connection with an acquisition or business combination can be classified as one-time integration/restructuring costs only if they are not associated with continuing activities. Thus, for example, costs for systems integration, systems development, and relocation of employees, all of which are associated with continuing activities, must be classified as ordinary operating expenses, not as one-time integration/restructuring costs.

38.     During the Relevant Period, Flowserve violated GAAP by improperly recording as one-time integration/restructuring costs numerous ordinary operating expenses incurred in connection with Flowserve's acquisitions of other businesses. This improper accounting practice resulted in financial statements that overstated Flowserve's operating margins and EBITDA, which were key financial metrics upon which Flowserve's debt covenants were based.

39.     The Officer Defendants and Audit Committee Defendants knew that Flowserve was violating GAAP as described above, because they regularly reviewed the Company's internal financial statements, which included the improper one-time charges.

### Dissemination of False and Misleading Information

40.     On March 29, 2001, Flowserve filed with the SEC its Form 10-K for fiscal year 2000 (the "2000 10-K"). The 2000 10-K was signed by Officer Defendants Greer and Hornbaker and Audit Committee Defendants Rusnack, Harris, Rampacek, and Rollans.   The 2000 10-K incorporated by reference Flowserve's 2000 Annual Report to Shareholders (the "2000 Annual

Report"), which stated, among other things, that Flowserve achieved net income of $13.2 million for fiscal year 2000.

41.     On May 31, 2001, Flowserve filed with the SEC a Form S-3 Registration Statement for the sale of up to $500 million of common stock, preferred stock, and debt securities (the "May 2001 Registration Statement"). The May 2001 Registration Statement was signed by Officer Defendants Greer and Hornbaker and Audit Committee Defendants Rusnack, Harris, Rampacek, and Rollans. The May 2001 Registration Statement incorporated by reference the 2000 Annual Report.

42.     On July 2, 2001, Flowserve filed with the SEC a Prospectus in connection with the securities registered pursuant to the May 2001 Registration Statement (the "July 2001 Prospectus"). The July 2001 Prospectus was signed by Officer Defendants Greer and Hornbaker and Audit Committee Defendants Rusnack, Harris, Rampacek, and Rollans. The July 2001 Prospectus incorporated by reference the 2000 Annual Report.

43.     On March 12, 2002, Flowserve filed with the SEC its Form 10-K for fiscal year 2001 (the "2001 10-K"). The 2001 10-K was signed by Officer Defendants Greer and Hornbaker and Audit Committee Defendants Rusnack, Harris, Rampacek, and Rollans. The 2001 10-K incorporated by reference Flowserve's 2001 Annual Report to Shareholders, which stated, among other things, that Flowserve achieved a net loss of $1.5 million for fiscal year 2001.

44.     On March 21, 2003, Flowserve filed with the SEC its Form 10-K for fiscal year 2002 (the "2002 10-K"). The 2002 10-K was signed by Officer Defendants Greer and Hornbaker, Audit Committee Defendants Rusnack, Harris, Rampacek, and Rollans, and defendant Sheehan. The 2002 10-K incorporated by reference Flowserve's 2002 Annual Report to Shareholders, which stated, among other things, that Flowserve achieved net income of $53 million for fiscal year 2002.

45.      The documents described in paragraphs 40-44 were each materially false and

misleading when issued.  At the time they signed the documents, each of the Individual Defendants

identified above as signatories to the documents knew that Flowserve's reported financial results

were materially overstated, as described herein.

### First Restatement of Historical Financial Statements

46.      On February 3, 2004, Flowserve issued a press release announcing a multi-year

restatement of its historical financial statements:

> Estimated restated results for the nine months ended Sept. 30, 2003 and for
> the full year 2002, 2001 and 2000 include aggregate pretax charges of
> approximately $11 million, predominantly to correct inventory and related
> balances which resulted in cost of sales adjustments.  During the latter part of
> the fourth quarter of 2003, the company became aware of potential inventory
> reconciliation adjustments related to certain of its facilities.  Subsequent
> analysis has determined that adjustments are required due to operational
> issues, principally related to isolated computer system implementation
> difficulties encountered at a relatively small number of sites, and the
> reconciliation of accounts.  These difficulties generally resulted from local
> site employees' failure to comply with the company's internal control
> procedures.  These adjustments generally relate to the company's valve
> service and pump businesses.
>
> The estimated effect of the restatement on previously reported results of the
> nine months ended Sept. 30, 2003 was a reduction to pretax earnings of $2.8
> million and reductions of $4.8 million, $3.0 million and $0.4 million for the
> years ended Dec. 31, 2002, 2001 and 2000, respectively.

47.      On March 15, 2004, Flowserve filed with the SEC a Form 8-K which stated:

> Flowserve Corp. (NYSE: FLS)  today filed a Form 12b-25 with the
> Securities and Exchange Commission notifying the Commission that the
> Company is unable to file its Form 10-K for 2003 ("2003 Form 10-K") by
> Mar. 15, 2004.  On Feb. 3, 2004, the Company announced its intention to
> restate its financial results for the nine months ended Sept. 30, 2003 and full
> years 2002, 2001 and 2000. The restatement predominantly corrects inventory
> and related balances and cost of sales.  The Company is working diligently to
> complete the restatement as expeditiously as possible, and the Audit/Finance
> Committee of the Board of Directors is conducting a review of the matter.
> Until these matters are resolved, the Company is not able to finalize the

financial statements and related information for inclusion in the Company's 2003 Form 10-K.

While the analysis of the restatement and the 2003 audit are ongoing, the Company presently believes that the impact of the restatement and other post closing adjustments related to 2003 will not affect its net income by more than 5% from the Feb. 3, 2004 preliminary estimated net income for the full-year 2003 of $1.20 per share before special items and 93 cents a share after special items. For the nine months ended Sept. 30, 2003 and for the full years 2002, 2001 and 2000, the Company currently expects that the preliminary estimated aggregate pre-tax charge of $11 million for all such periods announced on Feb. 3, 2004 will increase. The Company believes that none of the estimated restatement adjustments will adversely affect the Company's operations going forward.

The Company now believes that the effects of the estimated restatement adjustments may have caused the Company to have not complied by a minimal amount with a financial covenant at Sept. 30, 2001 in its then applicable Credit Agreement which is no longer in effect.

48.     On April 27, 2004, Flowserve filed with the SEC its Form 10-K for fiscal year 2003, which stated, among other things, "[o]n February 4, 2004, we received an informal inquiry from the SEC requesting the voluntary production of documents and information related to our February 3, 2004 announcement that we would restate our financial results for the nine months ended September 30, 2003 and the full years 2002, 2001 and 2000."

49.     On April 27, 2004, Flowserve issued a press release announcing its restated financial results:

Flowserve Corp. (NYSE: FLS) today announced financial results for 2003 and restated results for 2002 through 2000 and for the nine months ended Sept. 30, 2003.

For full year 2003, net income was $52.9 million, or 96 cents a share, compared with restated $45.5 million, or 87 cents a share, in the prior year. Before special items, full year 2003 net income was $69.1 million, or $1.25 a share, compared with restated $69.6 million, or $1.33 a share, in 2002.

Restated results for the first nine months of 2003 and full years 2002 through 2000 include aggregate pretax charges of $21.4 million for adjustments related to the restatement. These adjustments represent less than 5 percent of

12

aggregate operating income during the affected periods. In announcing preliminary financial information on Feb. 3, 2004, the company estimated aggregate pretax charges of approximately $11 million in these periods, predominantly to correct inventory and related balances that resulted in cost of sales adjustments.

Subsequent to that announcement, additional pretax charges were identified, principally related to the same issues. The effect of the restatement on prior periods is detailed in the attached schedules. The company believes the adjustments do not affect its operations going forward.

Reported results for 2003 include post-closing adjustments, including increasing reserves for pre-existing legal contingencies. These post-closing adjustments had the effect of reducing 2003 reported results by about 22 cents a share.

Partially offsetting these post-closing adjustments was the effect of a tax benefit of 7 cents a share for a refund previously not benefited that reduced the full year 2003 effective tax rate to 28.4 percent. The tax rate for 2004 is currently expected to range between 35 percent and 37 percent.

Special items in all periods of 2003 and 2002 generally relate to the May 2002 acquisition of the flow control division of Invensys plc (IFC) and early debt reduction in 2002.

50.     Specifically, Flowserve's restatement resulted in the following changes to its

historical financial statements:

| Fiscal Year | Operating Income* | | | Net Income/(Loss)* | | |
|---|---|---|---|---|---|---|
| | As Reported | As Restated | % Change | As Reported | As Restated | % Change |
| 2000 | $92.031 | $88.519 | -4% | $13.241 | $10.822 | -18% |
| 2001 | $142.154 | $130.369 | -8% | ($1.497) | ($10.488) | -601% |
| 2002 | $188.082 | $179.711 | -4% | $53.025 | $45.497 | -14% |

* All amounts in millions

## Second Restatement of Historical Financial Statements

51.     On October 26, 2004, Flowserve announced a delay in filing its financial statements

for the second and third quarters of 2004 due to, among other things, material weaknesses in its

internal controls:

> Flowserve Corp. (NYSE:FLS) today said that, as part of its internal control improvement activities and related account reconciliation work, it will delay its second and third quarter 2004 Form 10-Q filings with the Securities and Exchange Commission.
>
> The company believes that it will amend its previously announced financial results for the second quarter of 2004 in its second quarter Form 10-Q filing. These changes include certain post-closing adjustments and/or recently identified out-of-period expenses. The post-closing adjustments include the recognition of certain additional expenses following the quarter's end. The out-of-period expenses relate primarily to reconciliation of intercompany and deferred tax accounts. Neither are expected to impact the net cash balance during the affected periods.
>
> Depending on the amount of these out-of-period expenses, the company will assess whether a restatement is needed for certain past periods. Based on current information, the company estimates the cumulative impact on net income over the applicable periods to be less than $10 million, subject to revision following further analysis.
>
> Internal Controls, Sarbanes-Oxley Act Compliance and Associated Costs
>
> Selling, general and administrative expenses for the third and fourth quarter of 2004 are expected to reflect approximately $15 million of aggregate incremental costs associated with retaining a Big Four firm for assistance with Sarbanes-Oxley documentation and testing of internal controls. In the third quarter of 2004, the company intensified its activities and increased resources toward this initiative.
>
> Because of the company's decentralized global operations, 2004 financial management changes, previous restatement of earnings and delays in completing newly required Sarbanes-Oxley control documentation, the company expects a delay in the completion of the integrated audit by its outside auditors of the company's 2004 financial statements and internal controls. The company thus expects to file its 2004 Form 10-K in the latter part of the second quarter of 2005.

The company further believes that, as a result of its Sarbanes-Oxley Section 404 work and its consultation with its auditors, it will have certain material weaknesses in its internal controls at the 2004 year end. These weaknesses are anticipated to include, among other matters, issues in the reconciliation of the intercompany, deferred tax, and currency translation accounts, in addition to certain internal control issues described in its prior SEC filings.

However, the company plans to take whatever action is necessary to cause its financial statements in its 2004 Form 10-K filing with the SEC to be fairly stated in accordance with generally accepted accounting principles. The company also expects to finalize its plan, by the time of filing of this Form 10-K, to remediate any identified material control weaknesses.

52.     On February 7, 2005, Flowserve announced a second multi-year restatement of its

historical financial statements:

The company confirmed it will restate annual financial results for 2000 through 2003 and quarterly results during 2003 and the first quarter 2004. The restatement results from an ongoing comprehensive review of the company's intercompany accounts, deferred tax accounts, consolidation process, non-U.S. pension accruals, unreconciled accounts at a limited number of facilities and the aggregate impact of other individually insignificant adjustments. The company now estimates the cumulative net reduction in net income for the periods being restated should be less than $20 million and will primarily affect years prior to 2004. This estimate is subject to revision following further ongoing analysis, including the proper amount, classification and applicable periods of the restatement adjustments. The estimated adjustments compare with the company's reported cumulative operating income of nearly $600 million for the period 2000 through the first quarter of 2004. The company previously announced on Oct. 26, 2004, that it was considering a restatement.

The company now plans to file Form 10-Q reports for the second and third quarters of 2004 and its 2004 Form 10-K report in or shortly before the third quarter of 2005. The company expects to report new material control weaknesses, in addition to those previously announced, arising from its ongoing assessment and expects to receive an adverse opinion on the operating effectiveness of its internal controls from its external auditors. In addition, the company has certain internal control issues in its recordkeeping and other control procedures that have been identified during a pending IRS audit.

53.    On May 26, 2005, Flowserve issued a press release which stated:

2004 Financial Filings Expected in Third Quarter

The company plans to file its 2004 Form 10-K report during the third quarter of 2005. As previously announced, the company is restating annual financial results for 2000 through 2003 and quarterly results for the first quarter of 2004. The company continues to expect that the cumulative net reduction in net income, which is still being determined in amount and type, for the periods being restated should be less than $20 million.

Internal Control Update

As previously announced, the company expects to issue its management assertion in its 2004 Form 10-K stating that its internal controls over financial reporting were not operating effectively as of the end of 2004. The company believes that material control weaknesses in addition to those previously disclosed will fall into the following categories for company level and site level controls: documentation, communication, training and compliance with regard to financial and accounting policies; reconciliations of significant accounts; tax recordkeeping; internal audit processes; information technology and general computer processes; segregation of duties; verifying fixed assets; and approval and documentation of certain transactions and manual journal entries. The company's assessment of this matter is ongoing and additional material weaknesses and/or categories could be disclosed.

"Though this is a very expensive and detailed process involving complex accounting issues, our new finance team is making good progress in addressing and resolving these internal control matters," Sheehan said.

Pending Tax Audit

As previously reported, the IRS is currently conducting an audit of the company's tax returns for 1999 through 2001, in the course of which the company has identified certain recordkeeping and internal control issues. These issues, which are the subject of certain audit adjustments proposed by the IRS, relate to the company's ability to trace tax return items to source accounting records and provide documentation to substantiate deductions shown on tax returns. The company is diligently working on these documentation issues by identifying and reviewing records, obtaining additional supporting documents and preparing and filing amended tax returns. In addition, the company is discussing with the IRS other specific tax issues raised in the audit for which the company has established reserves in its financial statements. If the company cannot provide the required support or otherwise favorably resolve these issues, it may have a material tax

payment obligation in excess of existing reserves, which could impact its 2004 results of operations.

54.    On September 30, 2005, Flowserve issued a press release which stated:

Flowserve Corp. (NYSE:FLS) today said it expects to announce 2004 annual financial results and subsequently file its 2004 Form 10-K report with the Securities and Exchange Commission in the fourth quarter of 2005. The company said that it is not ready to provide 2004 annual financial information by the end of September, as it previously anticipated, due to the remaining work needed to complete 2004 financial statements, its restatement of prior year periods and related audits.

"Despite the delay, we have made substantial progress toward completing our financials," said Chief Financial Officer Mark A. Blinn. "We remain committed to ensuring that our closing process and restatement are thorough and complete." In addition to working on previously announced restatement issues, Flowserve's finance team recently identified additional items primarily related to fixed assets and hedge accounting under Financial Accounting Statement 133, which have taken more time to review.

Flowserve is restating financial results for 2000 through 2003 and quarterly results for the first quarter of 2004. Some of the restatement adjustments relate to periods prior to 2000.

The company now expects the cumulative impact of the restatement will be less than $30 million, which includes, among other things, adjustments related to intercompany accounts, non-U.S. pension accruals, unreconciled accounts, fixed asset charges, accounting for long-term contracts, deferred tax accounts and other tax matters, including the previously announced pending IRS audit. These adjustments will be reflected as a reduction in net income and beginning retained earnings for the relevant prior periods. The primary source of the increase from the previously disclosed $20 million estimate of the restatement amount relates to additional fixed asset charges for the periods of the restatement and earlier years.

55.    On February 6, 2006, Flowserve announced a further delay in filing its restated financial

statements:

Following an extensive review with its independent auditors of its non-cash foreign deferred tax accounting, Flowserve Corp. (NYSE: FLS) today announced that it will delay its planned filing date for its 2004 Form 10-K with the Securities and Exchange Commission, and its planned announcements today, including 2005 bookings, 2004 earnings, and its

17

restatement of its financial statements for 2000 through the first quarter of 2004.

The company said that apart from determining the effect of this remaining technical tax matter, it has completed finalizing its restatement and preparing its 2004 Form 10-K filing. The delay, therefore, is expected to be brief.

This deferred tax accounting action has a non-cash effect during the restatement period. This decision does not affect any actual tax payments or future cash liabilities to the IRS, state or foreign tax authorities, the company said. Further, this deferred tax accounting calculation has no applicability to the previously announced resolution of its IRS tax audit for the years 1999 through 2001, nor does it have any applicability to the company's potential cash liabilities regarding any future or ongoing federal, state or foreign tax audit. This deferred tax accounting calculation should have no impact on the company's normal business operations going forward.

The company is still calculating the impact of this non-cash deferred tax adjustment on its financial statements to be included in its 2004 Form 10-K filing, which may increase the cumulative reduction in net income from the restatement. However, it will have no impact on the company's pretax earnings during this period.

This review of deferred tax accounting arises from the technical requirements of Accounting Principles Board Opinion 23. This accounting principle permits companies to exclude unremitted earnings from foreign operations from its calculation of U.S. deferred taxes if certain specified technical criteria are met. If not, companies must calculate their financial statement tax provision for unremitted foreign earnings at the U.S. rate. The company, after careful consultation with its independent auditors over an extended period, late last week reconsidered its earlier view that the company had met in all material respects the APB 23 requirements in 2001, and, accordingly, is determining the appropriate deferred tax adjustment required at that date and later periods.

The company also said it has postponed today's planned conference call so that the rescheduled call can fully address all aspects of the 2004 Form 10-K filing, restatement and related matters. Details of the rescheduled conference call will be announced in the next few days.

56.    On February 13, 2006, Flowserve finally filed its restated financial statements and

announced:

The company restated its financial statements for 2002, 2003 and the first quarter of 2004. The cumulative net reduction in net earnings from the

restatement adjustments, including net charges prior to Jan. 1, 2002, was $35.9 million, primarily related to intercompany accounts, long-term contract accounting, financial derivatives, inventory valuation, pension expense, fixed assets and intangibles, unclaimed property, tax matters, and other adjustments from unreconciled accounts. The amount of net charges arising prior to 2002 is reflected in the financial statements as a $13.7 million reduction to beginning retained earnings as of Jan. 1, 2002, and is included in the $35.9 million cumulative net reduction in net earnings. The net charge from the restatement reduced previously reported net earnings for 2002 and 2003 by $10.7 million and $8.4 million, respectively, or by 20 cents and 16 cents a share, respectively, and reduced previously reported net earnings for the first quarter of 2004 by $3.1 million, or 6 cents a share.

"In 2005, the company spent $48 million specifically related to the 2004 financial statements and this restatement, which is due to the degree of thoroughness and depth of our analysis throughout this process," Blinn said.

As part of its assessment of internal control over financial reporting under Section 404 of the Sarbanes-Oxley Act and the restatement, the company performed additional analyses and other procedures to further ensure that its consolidated financial statements were prepared in accordance with generally accepted accounting principles (GAAP). These procedures included, among other things, expansion of its year-end closing procedures and dedication of significant internal resources and external consultants to scrutinize account analyses and reconciliations at a detailed level.

The company conducted expanded assessments of customer shipments at certain of its locations for revenue cut-off; analyzed certain long-term sales contracts; analyzed pending litigation matters; analyzed leasehold improvements for proper classification and amortization; analyzed inventory reserves, including obsolete and slow moving inventory calculations and estimates; assessed non-U.S. actuarially determined pension obligations and related liabilities; analyzed liabilities associated with unclaimed third party property; analyzed equity investments; analyzed accounts receivable factoring and securitization arrangements; analyzed accounting for financial derivatives; analyzed purchase accounting for acquired businesses; performed expanded procedures on the existence, depreciation and disposals of fixed assets; performed expanded analyses of intercompany, income tax and foreign currency translation accounts; and conducted site visits at selected locations to perform additional account balance examinations. As a result of these and other expanded procedures, the company believes that the financial statements included it its 2004 Form 10-K present fairly, in all material respects, its financial position, results of operations and cash flows for the periods presented in conformity with GAAP.

The company said that its review of deferred tax accounting pursuant to requirements of APB 23, as described in its Feb. 6, 2006, news release, resulted in no adjustment to the current financial statements, although its provision of deferred income taxes on unremitted foreign earnings could impact future financial statements.

"As a result of our restatement and Sarbanes-Oxley work, we are aggressively implementing a number of initiatives to improve our processes and controls and strengthen our finance organization, which will help us achieve our goal of taking Flowserve to the next level of success," Blinn said. "I am confident Flowserve will be well served by these important investments in our future."

Internal Controls Update

The company confirmed that, as previously announced, it had material weaknesses in internal controls as of Dec. 31, 2004. As a result, the company received an adverse audit opinion on the effectiveness of its internal controls. However, the company received an unqualified opinion on management's assessment of internal controls over financial reporting.

The material weaknesses in the company's internal controls as of Dec. 31, 2004, summaries of which the company has previously disclosed in news releases, are reported in the company's 2004 Form 10-K filed today. All of these issues were actively addressed in 2005. While substantial improvements were made, not all of these weaknesses were fully remediated by Dec. 31, 2005. The company will continue to take all actions necessary to cause its financial statements in its 2005 Form 10-K filing to be fairly stated in accordance with GAAP.

57.    In its Form 10-K for fiscal year 2004, Flowserve stated:

Following our announcement on February 3, 2004 of the restatement of our previously issued annual results for the years 2000 through 2002 and the quarterly results for 2003 the SEC initiated an informal inquiry into the facts and circumstances relating to the restatement. On June 2, 2004, the SEC issued a formal order of private investigation into the issues regarding that restatement and any other issues that arise from the investigation. We continue to cooperate with the SEC in this matter. We are unable to predict the outcome of this investigation. If the SEC takes enforcement action with regard to this investigation, we may be required to pay fines, consent to injunctions against future conduct or suffer other penalties.

## THE INDIVIDUAL DEFENDANTS' BREACHES OF FIDUCIARY DUTIES

58.     During the Relevant Period, the Officer Defendants and Audit Committee Defendants received numerous reports regarding problems with Flowserve's accounting and internal control practices and procedures. Through their receipt of weekly, monthly, and quarterly reports; attendance at Board and Audit Committee meetings; review of the Company's financial statements; and conversations with the Company's management, internal auditors, and external auditors, the Officer Defendants and Audit Committee Defendants knew that Flowserve's accounting practices were improper and its internal controls were materially deficient.

59.     In breach of both their fiduciary duty of good faith and, with respect to the Audit Committee Defendants, their responsibilities pursuant to the Audit Committee Charter, the Officer Defendants and Audit Committee Defendants willfully ignored the obvious and pervasive problems with Flowserve's accounting and internal control practices and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence.

60.     The Officer Defendants, Audit Committee Defendants, and defendant Sheehan further breached their fiduciary duty of good faith by knowingly disseminating to Flowserve shareholders, in Flowserve's SEC filings and otherwise, materially false and misleading information regarding the Company and its financial results, as alleged herein.

61.     The foregoing misconduct of the Individual Defendants caused Flowserve to sustain damages, including, but not limited to, costs and expenses associated with the Company's two restatements of historical financial results and the SEC investigation of the Company.

## THE OFFICER DEFENDANTS WERE UNJUSTLY ENRICHED

62.     For fiscal years 2000-2002, the Officer Defendants, based on the Company's materially false and misleading financial results, received salaries, cash bonuses, shares of and

options to purchase Flowserve common stock, as follows:

| Name | Year | Salary | Cash Bonus | No. of Options |
|------|------|--------|------------|----------------|
| Greer | 2000 | $617,490 | $551,048 | 0 |
| | 2001 | $662,978 | $186,000 | 0 |
| | 2002 | $710,439 | $227,000 | 55,000 |
| | | | | |
| Hornbaker | 2000 | $274,953 | $227,048 | 13,100 |
| | 2001 | $296,308 | $62,000 | 11,000 |
| | 2002 | $317,769 | $76,000 | 11,000 |

63.    As a direct and proximate result of their breaches of fiduciary duties, as alleged herein, the Officer Defendants were unjustly enriched by their receipt of the salaries, cash bonuses, and stock options set forth in the preceding paragraph, the amounts of which would have been substantially lower had the Company's financial results been accurately recorded.

## THE DIRECTOR DEFENDANTS' VIOLATION OF
## NEW YORK BUSINESS CORPORATION LAW § 602(b)

64.    New York Business Corporation Law § 602(b) provides that "[a] meeting of shareholders shall be held annually for the election of directors and the transaction of other business on a date fixed by or under the by-laws."

65.    Flowserve's last annual meeting was held on June 22, 2004, more than 19 months ago.

66.    In violation of New York Business Corporation Law § 602(b), the Director Defendants failed to schedule, provide notice of, or hold an annual meeting for 2005.

## CLASS ACTION ALLEGATIONS

67.    Plaintiff brings this action on his own behalf and as a class action on behalf of all Class members, as defined herein.

68.    The "Class" consists of all persons who held Flowserve common stock on the date of filing of this Complaint. Excluded from the Class are defendants and their respective families,

subsidiaries, affiliates, and successors.

69.     Membership in the Class is so numerous as to make joinder of all Class members impracticable. There are millions of shares of Flowserve common stock outstanding. The disposition of the Class' claims in a class action will provide substantial benefits to the parties and the Court.

70.     There are numerous and substantial questions of law and fact common to all members of the Class which control this litigation and which predominate over any individual issues. The common questions of law and fact include:

> a.      whether the defendants breached their fiduciary duties as alleged herein;
>
> b.      whether the defendants violated the Company's by-laws as alleged herein; and
>
> c.      whether the relief requested herein on behalf of the Class should be granted.

71.     The claims of the named plaintiff are typical of the claims of the Class and the named plaintiff has no interest adverse to the interests of the other members of the Class.

72.     A class action is superior to other methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons:

> a.      the prosecution of separate actions would create a risk of inconsistent or varying adjudications;
>
> b.      the defendants have acted on grounds generally applicable to the Class;
>
> c.      because of the complexity of the issues involved in this litigation, the size of the individual Class members' claims, and the limited resources of the Class members, few, if any, Class members could afford to seek legal redress individually for the wrongs the defendants committed;
>
> d.      this action will cause an orderly and expeditious administration of the Class' claims, and will foster economies of time, effort and expenses;
>
> e.      when the liability of the defendants has been adjudicated, claims of all members of the Class can be determined by the Court; and

f.      this action presents no difficulty that would impede its management by the Court as a class action and is the best available means by which plaintiff and other members of the Class can seek redress for the harm caused by the defendants.

## DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

73.      Plaintiff brings this action derivatively in the right and for the benefit of Flowserve to redress breaches of fiduciary duties, unjust enrichment, and other violations of law by the Individual Defendants.

74.      Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

75.      Plaintiff is an owner of Flowserve common stock and was an owner of Flowserve common stock at all times relevant to the Individual Defendants' wrongful course of conduct alleged herein.

76.      As a result of the facts set forth herein, Plaintiff has not made any demand on the Board to institute this action.  Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action for the following reasons:

a.      The Board currently consists of the 10 Director Defendants. All of the Director Defendants violated New York Business Corporation Law § 602(b) by failing to schedule, provide notice of, or hold an annual meeting for 2005.  The Director Defendants' violation of New York Business Corporation Law § 602(b) was not the result of good faith business judgment, but rather was the result of the Director Defendants' failure to exercise good faith business judgment and/or their failure to inform themselves to a degree reasonably necessary under the circumstances;

b.      The Audit Committee Defendants breached their fiduciary duties by willfully ignoring the obvious and pervasive problems with Flowserve's accounting and internal control practices and procedures, failing to make a good faith effort to correct the problems or prevent their recurrence, and knowingly disseminating to Flowserve shareholders materially false and misleading

24

information regarding the Company and its financial results, as alleged herein. The Audit Committee Defendants' foregoing misconduct was not the result of good faith business judgment, but rather was the result of the Director Defendants' failure to exercise good faith business judgment and/or their failure to inform themselves to a degree reasonably necessary under the circumstances;

c.    Defendant Sheehan breached his fiduciary duties by knowingly disseminating to Flowserve shareholders materially false and misleading information regarding the Company and its financial results, as alleged herein. Sheehan's foregoing misconduct was not the result of good faith business judgment, but rather was the result of his failure to exercise good faith business judgment and/or his failure to inform himself to a degree reasonably necessary under the circumstances;

d.    The principal professional occupation of defendant Kling is his employment as President and Chief Executive Officer of the Company, pursuant to which he receives hundreds of thousands of dollars per year in salary, bonuses, and other compensation. Accordingly, Kling is incapable of independently and disinterestedly considering a demand to commence this action against the other Director Defendants, who control his employment and compensation.

## COUNT I

## AGAINST THE OFFICER DEFENDANTS AND AUDIT COMMITTEE DEFENDANTS FOR BREACH OF FIDUCIARY DUTY OF GOOD FAITH (ACCOUNTING AND INTERNAL CONTROLS)

77.    Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

78.    As alleged in detail herein, each of the Individual Defendants had a duty to, *inter alia*, exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and, when placed on notice of improper or imprudent conduct by the Company and/or its employees, exercise good faith in taking action to correct the misconduct and prevent its recurrence.

79.    As alleged in detail herein, the Officer Defendants and Audit Committee Defendants willfully ignored the obvious and pervasive problems with Flowserve's accounting and internal

25

control practices and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence.

80.     As a direct and proximate result of the Officer Defendants' and Audit Committee Defendants' foregoing breaches of fiduciary duties, the Company has sustained damages, as alleged herein.

**COUNT II**

**AGAINST THE OFFICER DEFENDANTS, AUDIT COMMITTEE DEFENDANTS, AND DEFENDANT SHEEHAN FOR BREACH OF FIDUCIARY DUTY OF GOOD FAITH (DISSEMINATION OF FALSE AND MISLEADING INFORMATION)**

81.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

82.     As alleged in detail herein, each of the Individual Defendants had a duty to, *inter alia*, exercise good faith in supervising the preparation and filing of all financial statements and other financial information required by law, including periodic financial statements and reports filed with the SEC.

83.     As alleged in detail herein, the Officer Defendants, Audit Committee Defendants, and defendant Sheehan breached their fiduciary duty of good faith by knowingly disseminating to Flowserve shareholders, in Flowserve's SEC filings and otherwise, materially false and misleading information regarding the Company and its financial results.

84.     As a direct and proximate result of the Officer Defendants', Audit Committee Defendants', and defendant Sheehan's foregoing breaches of fiduciary duties, the Company has sustained damages, as alleged herein.

## COUNT III

### AGAINST THE DIRECTOR DEFENDANTS
### FOR VIOLATION OF NEW YORK BUSINESS CORPORATION LAW § 602(b)

85.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

86.     New York Business Corporation Law § 602(b) provides that "[a] meeting of shareholders shall be held annually for the election of directors and the transaction of other business on a date fixed by or under the by-laws."

87.     Flowserve's last annual meeting was held on June 22, 2004, more than 19 months ago.

88.     In violation of New York Business Corporation Law § 602(b), the Director Defendants failed to schedule, provide notice of, or hold an annual meeting for 2005.

89.     To remedy the Director Defendants' foregoing statutory violation, the Court should issue an Order requiring the Director Defendants within ten (10) days to: (i) schedule an annual meeting of Flowserve's shareholders to be held no later than sixty (60) days from the date of the Order; and (ii) provide to Flowserve's shareholders notice of the annual meeting in accordance with Flowserve's by-laws.

## COUNT IV

### AGAINST THE OFFICER DEFENDANTS
### FOR UNJUST ENRICHMENT

90.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

91.     The Officer Defendants were unjustly enriched by their receipt of salaries, cash

bonuses, and stock options, as alleged herein, and it would be unconscionable to allow them to retain the benefits of their improper conduct.

92.     To remedy the Officer Defendants' unjust enrichment, the Court should order them to disgorge to the Company all salaries, cash bonuses, and stock options alleged herein.

WHEREFORE, Plaintiff demands judgment as follows:

A.      Issuing an Order requiring the Director Defendants within ten (10) days to: (i) schedule an annual meeting of Flowserve's shareholders to be held no later than sixty (60) days from the date of the Order; and (ii) provide to Flowserve's shareholders notice of the annual meeting in accordance with Flowserve's by-laws;

B.      Awarding the Company the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties;

C.      Ordering the Officer Defendants to disgorge to the Company all salaries, cash bonuses, restricted stock, and stock options alleged herein;

D.      Granting appropriate equitable relief to remedy Defendants' breaches of fiduciary duties;

E.      Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  March 14, 2006

Respectfully submitted,


Roger L. Mandel
Texas Bar No. 12891750
Marc R. Stanley
Texas Bar No. 19046500
Martin Woodward
Texas Bar No. 00797693
STANLEY, MANDEL & IOLA, L.L.P.
3100 Monticello Avenue, Suite 750
Dallas, TX  75205
Telephone:  (214) 443-4300
Fax:  (214) 443-0358

Eric L. Zagar
Emanuel Shachmurove
SCHIFFRIN & BARROWAY, LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Fax: (610) 667-7056

*Attorneys for Plaintiff*

29

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM)

## I.(a) PLAINTIFFS

SAM KING, individually and on behalf of all other similarly situated and derivatively on behalf of Nominal Defendant FLOWSERVE CORPORATION

## DEFENDANTS

CHRISTOPHER A. BARTLETT, HUGH K. COBLE, C. SCOTT GREER, DIANE C. HARRIS, GEORGE TO HAYMAKER, JR., RENEE J. HORNBAKER, MICHAEL F. JOHNSTON, LEWIS M. KLING, CHARLES M. RAMPACEK, JAMES O. ROLLANS, WILLIAM C. RUSNACK and KEVIN E. SHEEHAN

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE     IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**3-06 CV-0453 G**

(c) ATTORNEYS (FIRM NAME, ADDRESS AND TELEPHONE NUMBER)
Marc R. Stanley, Roger L. Mandel & Martin Woodward, Stanley, Mandel & Iola, LLP, 3100 Monticello Ave., Ste. 750, Dallas, Texas; 214-443-4300; 214-443-0358 (fax);

ATTORNEYS (IF KNOWN)

RECEIVED

MAR 1 4 2006

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R R & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 850 Securities/Commodities/Exchange |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / **HABEAS CORPUS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights / ☐ 540 Mandamus & Other |  | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 550 Civil Rights |  |  |  |
|  | ☐ 555 Prison Condition |  |  |  |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Complaint alleging that the Defendant directors and officers breached their fiduciary duties to the company, Nominal Defendant Flowserve Corporation.

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION ☒ UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint
JURY DEMAND:   ☒ YES   ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE   Jane J. Boyle

DOCKET NUMBER   3:03-cv-01769-B

DATE
March 14, 2006

SIGNATURE OF ATTORNEY OF RECORD
Roger L. Mandel

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____